12531

**PEURIFOY RECEIVER v. WESTMINSTER LOAN & TRUST CO.**
(145 S. E., 706)

*Messrs. Herndon & Thompson,* and *W. D. Barnett,* for
appellant,

*Messrs. D. W. Robinson,* and *D. W. Robinson, Jr.,* for
respondent,

102

November 28, 1928.

The opinion of the Court was delivered by MR. JUSTICE CARTER.

The plaintiff, James E. Peurifoy, receiver of the American Bank & Trust Company, commenced this action against the defendant, Westminster Loan & Trust Company, in the Court of Common Pleas for Richland County, November, 1926, for the purpose of ascertaining the validity of the claim of the defendant to certain alleged securities held by the defendant. The case was tried by his Honor, Judge W. H. Townsend, without a jury, on the 16th day of May, 1927, on an agreed statement of facts, hereinafter referred to, and testimony taken before his Honor at the trial. From the decree issued by Judge Townsend in favor of the plaintiff, adjudging the securities in question to be the property of the American Bank & Trust Company, free from any liens thereon in favor of the defendant, Westminster Loan & Trust Company, the defendant has appealed to this Court, and asks a reversal upon the grounds set forth under the several exceptions, which will be reported with the case.

The exceptions raise several questions, but under our view of the case the leading question involved in the appeal is: Was the transfer of the notes and receivables in question as security for the deposit of the Westminster Loan & Trust Company with the American Bank & Trust Company invalid as a preference under the assignment laws?

A consideration of this question necessarily involves the facts in the case, and we shall therefore review at length the agreed statement of facts contained in the transcript as well as the testimony taken at the trial of the case.

The defendant, Westminster Loan & Trust Company, prior to and up to the 14th day of December, 1925, was engaged in the banking business at Westminster, S. C., and at that time and up until the evening of June 25, 1926, the American Bank & Trust Company was engaged in the banking business at Columbia, S. C.; both institutions being Corporations created and existing under the laws of the State of South Carolina. On the 14th day of December, 1925, upon request of a majority of the directors of Westminster Loan & Trust Company, W. W. Bradley, as State

Bank Examiner, took possession and control of the property and business of this bank for a period not exceeding 30 days, and during the 30-day period, with the consent of W. W. Bradley, as State Bank Examiner, an order was issued by Judge M. L. Bonham, authorizing the said bank to liquidate its affairs under the sole supervision and control of the said W. W. Bradley, as State Bank Examiner, subject to the order of the Court, as provided in Section 3981 of the Civil Code of South Carolina, and in accordance with this order the Board of Directors of this bank, under the sole supervision and control of W. W. Bradley, as State Bank Examiner, undertook to liquidate and settle up the business of said bank, Westminster Loan & Trust Company, and the "active management of the liquidation was placed in the hands of Errett Zimmerman by the said W. W. Bradley, as State Bank Examiner, and by the Board of Directors of the Westminster Loan & Trust Company, as liquidating trustees, and he immediately entered upon the discharge of his duties as said manager, and was in the active discharge of such duties from that time until now." On or about the 21st day of June, 1926, the Westminster Loan & Trust Company had on deposit, with the Westminster Bank, of Westminster, S. C., the sum of $5,000, and at that time a request was made by J. Pope Matthews, chairman of the board of directors of the American Bank & Trust Company, acting as such chairman, and I. M. Mauldin, president of said bank, and acting as such president, to deposit the said sum of money with the American Bank & Trust Company, and under the direction of the said W. W. Bradley, as State Bank Examiner, the said Errett Zimmerman, acting in the capacity aforesaid, issued his check on the Westminster Bank, payable to the American Bank & Trust Company, which check was received by the American Bank & Trust Company and entered as a deposit on the 22d day of June, 1926, and the check was later paid by the Westminster Bank. It is admitted that at the time the deposit in question was made the American Bank & Trust Company was and had

been for several weeks prior thereto insolvent; that the said deposit was made by the Westminster Loan & Trust Company "in the utmost good faith, and without any knowledge or information on the part of the Westminster Loan & Trust Company of the insolvency of the American Bank & Trust Company and of its inability to meet its obligations."

By resolution of the board of directors of the American Bank & Trust Company that bank was on the 25th day of June, 1926, placed in the hands of the State Bank Examiner, and remained under the control of the State Bank Examiner until the appointment of the plaintiff, James E. Peurifoy as receiver on the 19th day of July, 1926, by order of his Honor, Judge W. H. Townsend, and has been acting as such receiver from that date to the present time, in charge of all of the property and assets of the American Bank & Trust Company. These are facts set forth in the agreed statement contained in the transcript of record.

From the testimony taken before Judge Townsend at the trial of the case, it conclusively appears that on the 20th day of June, 1926, Mr. Matthews, chairman of the Board of Directors of the American Bank & Trust Company, and Mr. Mauldin, president of that bank, accompanied by Mr. Bradley, State Bank Examiner, went to Westminster, S. C., to see Mr. Errett Zimmerman, the liquidating agent of the defendant bank, Westminster Loan & Trust Company, for the purpose of getting Mr. Zimmerman to transfer a deposit of $5,000 from the Westminster Bank to the American Bank & Trust Company. According to the testimony of Mr. Zimmerman, Mr. Bradley, the State Bank Examiner, did the talking, and Mr. Zimmerman did not think Mr. Mauldin and Mr. Matthews at the time of the conversation concerning the deposit were close enough to hear the conversation, though they were along with Mr. Bradley; that Mr. Bradley requested Mr. Zimmerman to send to the American Bank & Trust Company a deposit in the sum of $5,000, stating to Mr. Zimmerman at the time that the American Bank & Trust Company would put up security

for the deposit; that on account of Mr. Bradley's position he trusted to Mr. Bradley to pass on the sufficiency of the security; that it was accordingly agreed that the deposit would be sent, and pursuant thereto on the following day, June 21, 1926, a check for the sum of $5,000, dated June 21, 1926, was issued, signed, "Westminster Loan & Trust Company, by E. Zimmerman, Liquidating Agent," drawn on the Westminster Bank, of Westminster, S. C., payable to American Bank & Trust Company, and mailed to the American Bank & Trust Company, which was received by said bank the following day, June 22, 1926.

According to the testimony of Mr. Bradley, the state bank examiner, he accompanied Mr. Matthews, chairman of the board of directors of the American Bank & Trust Company, and Mr. Mauldin, president of that bank, on a trip to secure funds for said bank, to save the bank from closing; and that the three, Mauldin, Matthews, and Bradley, left Columbia on the 19th or 20th of June, 1926, first going to Greenwood, then to Anderson, where they spent the night, and the following day went to Westminster.

Mr. Bradley's testimony on this point is as follows:

"Q. Will you tell us what took place at Westminster with reference to this Five Thousand Dollar loan and the security we have here? A. Well, Mr. Mauldin or Mr. Matthews or myself, I don't recall who, asked Mr. Zimmerman about giving *us* a deposit and told him that or *they* told him that *they* would secure the deposit and he said he would send it down, I think the next day or some time right after that, which he did.

"Q. It was a proposition made to Mr. Zimmerman, that if he would send you five thousand dollar deposit that it would be secured? A. Yes, sir.

"Q. What arrangement was made in reference to the security? A. Well, it was virtually a deposit from myself as State Bank Examiner, and, of course, I undertook to look after getting security.

"Q. Were you to pass on the security or get the security or not? A. Yes, sir; I was to pass on the security.

"Q. The deposit was to be put up and you were to get the security for the deposit? A. Yes sir.

"Q. Mr. Bradley, did Mr. Zimmerman or any one else connected with the Westminster Loan & Trust Company have any information that there was a run at the time on the American Bank & Trust Company? A. I don't think Mr. Zimmerman had any intimation of that—I don't think so.

"Q. He is the only one talked to with reference to this matter at the Westminster Loan & Trust Company? A. Yes, sir.

"Q. Mr. Bradley, did you get the security for this deposit and pass on it? A. Yes, sir.

"Q. Did you get the two notes that are here in question of Mrs. Tobias and Mr. Nicholson? A. Yes, sir."

Further on in his testimony, on cross-examination on this subject, Mr. Bradley testified:

"Q. Now, Mr. Zimmerman was liquidating agent? A. Yes, sir.

"Q. Who did the talking with Mr. Zimmerman? A. I think I had the first conversation with Mr. Zimmerman."

As we view the testimony, it is clearly established that the deposit in question was procured under an agreement that the American Bank & Trust Company would put up security for the deposit, and that Mr. Bradley, State Bank Examiner, would pass upon the security. This is true, it matters not whether the representation was made by Mr. Matthews, chairman of the board of directors of the American Bank & Trust Company, Mr. Mauldin, president of said Bank, or by Mr. Bradley, State Bank Examiner, for as to this transaction procuring the deposit, considering the testimony in connection with the agreed statement of facts, Mr. Bradley was acting as the representative of the American Bank & Trust Company. There was absolutely no reason why the Westminster Loan & Trust Company should desire to transfer the $5,000 it had on deposit in the Westminster Bank to the American Bank & Trust Company. The Westminster Bank was sound, so far as the record

discloses, and the only advantage that could possibly be gained by transferring the funds to the American Bank & Trust Company was in getting security for the deposit; and, further, we are satisfied, from the evidence in the case, considered in connection with the agreed statement of facts, that Mr. Zimmerman, the liquidating agent in active charge of the funds of the defendant bank, would not have issued his check transferring the funds except for the fact that security was agreed to be given, and that at the time Mr. Zimmerman agreed to send the check transferring the deposit it was agreed that the American Bank & Trust Company would secure the deposit, and in pursuance of this agreement the check was issued and mailed to the American Bank & Trust Company, transferring the funds to that bank.

According to the testimony of Mr. C. M. Earle, Jr., cashier of the American Bank & Trust Company, witness for the plaintiff, the check in question, signed, "Westminster Loan & Trust Company, by E. Zimmerman, Liquidating Agent," was received by the American Bank & Trust Company on the 22d day of June, 1926; the check, together with letter accompanying the check, was handed to Mr. Earle by Mr. Mauldin, president of the American Bank & Trust Company, who requested Mr. Earle to make out a deposit slip for the amount. Mr. Earle complied with the instruction of Mr. Mauldin and handed to Mr. Mauldin a duplicate of the deposit slip. While Mr. Earle did not personally make the entry on the books, he stated that the entry was made June 22, 1926, giving credit for the $5,000. The letter referred to was a letter from Mr. Zimmerman, liquidating agent of the Westminster Loan & Trust Company, addressed to the American Bank & Trust Company, simply stating that a check for $5,000 on Westminster Bank was enclosed, and requesting that the same be placed to the credit of the Westminster Loan & Trust Company. Attached to this letter introduced in evidence was what purported to be a copy of letter written by Mr. Mauldin, president of the American Bank & Trust Company, acknowledg-

ing receipt of the check from Mr. Zimmerman, the liquidating agent, and sending to Mr. Zimmerman a duplicate deposit ticket. This deposit slip contained the following provision:

"Items payable out of town whether credited upon receipt or not are received and collected only at the risk of the depositor. We are not responsible for losses in the mail and do not guarantee the banks to which we send such items, and in collecting them this bank acts only as your agent, and the responsibility for such must remain with the depositor until this bank has received final payment of check sent us in return for same."

The check in question, according to the testimony of J. R. Sullivan, president of Westminster Bank, witness for the defendant, was received at the Westminster Bank through the Federal Reserve Bank of Richmond on the 24th day of June, 1926, the Federal Reserve Bank having received the check from the American National Bank of Richmond on the same day, and check was stamped as having been paid by the Westminster Bank on said date, June 24, 1926, but was not charged to the Westminster Bank by the Federal Reserve Bank of Richmond until June 26, 1926, and was placed to the credit of the American Bank & Trust Company the same day, June 26, 1926. It further appears from the testimony of Mr. Sullivan that while the item was charged against the account of Mr. Zimmerman, as liquidating agent of the Westminster Loan & Trust Company, on the 24th day of June, 1926, it should not have been charged against Mr. Zimmerman's account until June 26th, according to the testimony of Mr. Sullivan, for the reason that the Westminster Bank did not have to pay for it until that date, though Mr. Sullivan stated that so far as Mr. Zimmerman was concerned, it was a closed transaction on the 24th day of June.

As to when the security in question, consisting of a note of Ethel M. Tobias for $3,000, due May 27, 1926, and a note of W. H. Nicholson, trustee, for $5,333.24 due June 15, 1926, was delivered unto the Westminster Loan &

Trust Company, or set aside for that purpose, the testimony is not altogether clear, and some of the testimony on this point was admitted over the objection of the defendant; but it is clear that the notes in question were withdown from the vaults of the bank, and, as we view the testimony, set aside as security to the deposit in question. The notes were produced at the trial by the defendant, and attached to the same was a statement prepared by Mr. Mauldin, president of the American Bank & Trust Company, to the effect that the deposit of the Westminster Loan & Trust Company was secured by these notes, which statement bears date June 21, 1926. In the report of Bank Examiners Watkins and Milling, showing the condition of the American Bank & Trust Company at the close of business June 25th, 1926, the following statement appears:

"Notes pledged with W. W. Bradley, State Bank Examiner, account Westminster Loan & Trust Company, Ethel M. Tobias, Three Thousand ($3,000.00) Dollars, W. H. Nicholson, Trustee, Five Thousand Three Hundred Thirty-three and 24/100 ($5,333.24) Dollars, total notes pledged with W. W. Bradley, State Bank Examiner, State Bank Examiner-Westminster Loan & Trust Company, Eight Thousand Three Hundred Thirty-three and 24/100 ($8,333.24) Dollars."

In the course of his testimony, Mr. Bradley, state bank examiner, testified on this point that he got the two notes in question as security for the deposit of the Westminster Loan & Trust Company, and along with the notes he received the statement above referred to, bearing date June 21, 1926, to the effect that the notes were security for this deposit; and while Mr. Bradley was unable to state the exact day he received the notes and the statement attached, he testified that it was his impression that he got them a day or two before the bank closed. If it was only one day before the American Bank & Trust Company closed, then the notes were received by Mr. Bradley the same day the check in question was paid, and if the notes were received two days before this bank closed (which construction

might resonably be placed upon the testimony), then the notes were delivered into the hands of Mr. Bradley, for said purpose, one day before the check issued by Mr. Zimmerman, as liquidating agent of the Westminster Loan & Trust Company, was paid by the Westminster Bank. Mr. Bradley further testified that these notes were on the desk of Mr. Mauldin, president of the American Bank & Trust Company, all the way through, and that Mr. Mauldin was with him at the time he (Mr. Bradley) went over the security, and that these notes were accepted as security for the deposit pursuant to the agreement; that it, the agreement made with Mr. Zimmerman, as liquidating agent of the defendant bank, at the time Mr. Zimmerman agreed to issue and mail the check in question.

It also appears from the testimony of Mr. Bradley, considered in connection with the testimony of Mr. Cassels, witness for the plaintiff, that on the date the American Bank & Trust Company closed, and for several days prior thereto, the American Bank & Trust Company had in the hands of the American National Bank of Richmond, to which bank the check was forwarded, ample funds, so that when this bank, the American National Bank of Richmond, received payment of the check in question through the Federal Reserve Bank of Richmond, which latter bank received payment from the bank on which the check was drawn, there was no occasion for withholding from the American Bank & Trust Company the proceeds of the check, and we cannot escape the conclusion that the assets of the American Bank & Trust Company were increased to the full amount of the check in question, $5,000.

By agreement there was read into the record by counsel for the plaintiff the testimony of Mr. A. C. Tobias, Jr., taken in another case in which the Bank of Georgetown was involved. To certain parts of this testimony, counsel for defendant interposed objection on the ground that the same was hearsay, incompetent, and irrelevant, and while it is obvious that a considerable part of this testimony was in-

competent and inapplicable, for the purposing of passing upon the questions now under consideration, we shall consider the same as having been introduced without objection. According to the testimony of Mr. Tobias, husband of Mrs. Ethel M. Tobias, who executed the $3,000 note in question in this case, the other two notes executed by Mrs. Tobias, which were involved in the Georgetown Bank Case, were on the desk of Mr. Mauldin, president of the American Bank & Trust Company, at the time that bank closed, together with the renewal notes, the renewal notes being later returned to Mr. Tobias; that he (Mr. Tobias) subsequently received notice from Mr. Nettles, the attorney for Mr. Bradley, that he had those notes; that Mr. Nettles told him that those two notes and a $3,000 note were in the hands of Mr. Bradley, and that Mr. Bradley received them on the 21st of June; that he (Mr. Tobias) explained to Mr. Nettles that it was physically impossible for Mr. Bradley to have received the notes on the 21st of June, because he (Mr. Tobias) had seen them on Mr. Mauldin's desk on the 22d day of June, and that he had discussed the matter with Mr. Mauldin, and that on the day after the bank closed, which was on Saturday, the 26th, Mr. Mauldin had on his desk the *renewal*, which he had not run through the bank and never had returned the originals to him (Mr. Tobias); that he (Mr. Tobias) at the time, in order to make certain, went to Mr. Earle in the bank and asked him to make sure that the notes were still on Mr. Mauldin's desk; that Mr. Earl went back to Mr. Mauldin's desk, and on returning said, "Yes, they were still there;" that he (Mr. Tobias) on the following Wednesday got the renewals back from Mr. Mauldin, the renewals never having been used; that he told Mr. Nettles of all of this, and later Mr. Nettles, after an investigation, told him that he (Mr. Tobias) was entirely correct, and that in truth those notes had not been delivered to Mr. Bradley until several days after the bank closed; that later Mr. Mauldin confirmed what Mr. Nettles had told him, that those notes had not been given until several days after the bank was closed.

Waiving the objections interposed by the defendant to this testimony and considering the same, it will be observed that in the testimony of Mr. Tobias he makes but one direct reference to notes involved in this case, and that was with reference to the $3,000 note when he quoted Mr. Nettles as saying that "those two notes and a three thousand dollar note was in the hands of Mr. Bradley," and that Mr. Bradley had received them on the 21st of June, and in further explanation of that Mr. Nettles said on the 21st day of June, Mr. Bradley, as receiver for the Bank of Georgetown had transferred ten thousand dollars deposit to the American Bank & Trust Company. Under our view of this testimony, Mr. Tobias all the way through was testifying with reference to the two notes held by the Bank of Georgetown, and only incidentally referred to "a three thousand note" he quotes Mr. Nettles as saying Mr. Bradley had in his hands. While it may be fairly presumed that the $3,000 note referred to here is the three thousand dollar not involved in this case, it cannot be definitely so stated, for the reason that Mr. Tobias in his testimony, taken in the Georgetown Bank Case, gives no discription of the note, simply quotes Mr. Nettles as saying that Mr. Bradley held "a three thousand dollar note" along with the two notes involved in the *Georgetown Bank Case*. Mr. Tobias testified that he saw the notes executed by Mrs. Tobias on the desk of Mr. Mauldin on the 22d of June, that is, the two notes involved in the *Georgetown Bank Case,* and it may be that he intended to include also the $3,000 note involved in this case, and he further testified that he saw the renewals on Mr. Mauldin's desk on the 26th of June, the day after the American Bank & Trust Company closed, but he did not testify that he saw the original notes there on that date, and the renewals were not used but returned to Mr. Tobias together with his check for the interest. While Mr. Tobias in relating what occurred on the 26th quotes Mr. Earle as saying that the notes were still on Mr. Mauldin's desk at that time, it is not stated that Mr. Earle said the original

notes were on the desk of Mr. Mauldin at that time, and when this part of Mr. Tobias' testimony is considered in connection with his statement that he on that occasion saw the renewal notes on the desk of Mr. Mauldin, we must conclude that Mr. Tobias intended to quote Mr. Earle as saying the renewal notes were on the desk of Mr. Mauldin at that time. Furthermore, when the testimony of Mr. Tobias is considered in connection with the testimony of Mr. Earle, cashier of the American Bank & Trust Company, it will be clearly seen that the renewal notes were on the desk of Mr. Mauldin on the 26th and not the original notes executed by Mrs. Tobias. Mr. Earl testified on this point as follows, on examination by plaintiff's attorney:

"Q. Now, there is a statement with a note of Mrs. Ethel Tobias for three thousand ($3,000.00) dollars, and a note of W. H. Nicholson, trustee, for five thousand three hundred thirty-three and 24/100 ($5,333.24) dollars. Tell us what you know about either one of these notes. A. On the 26th of June, which was the day following the closing of the bank, Mr. Tobias called me up, asked me in reference to some notes of Mrs. Tobias, which were being held by the bank, more or less in suspense."

"Q. Do you know how many notes there were? A. As I recall, three notes.

"Q. What were the denominations? A. I don't recall.

"Q. Those are the only three she had with the bank? A. Yes, sir.

"Q. All right. A. At the time the notes were matured and Mr. Tobias had forwarded renewals to take up those three notes, with a check for a sufficient amount to reduce them some and take care of the renewals. *For some reason,* Mr. Mauldin *held up that renewal* and *didn't put it through* at that time, and when Mr. Tobias called, he wanted to know if the *new notes* had been made and if so what disposition been made of the old notes.

"Q. That was Saturday, June 26th? A. Yes, sir; and

I told him I thought Mr. Mauldin still had the *renewals* on his desk unhandled.

"Q. When you say renewals, were the *old ones there too?* A. Yes, sir. So he asked me to verify that, so as to relieve his mind, so he held the 'phone and I went back to Mr. Mauldin's desk and told him that Mr. Tobias has called to know the status of Mrs. Tobias' notes and he said, 'You can tell Mr. Tobias that I have the *renewal notes* on my desk.'

"Q. Did you notice whether the notes were there on that day—the 26th? A. I don't know as I saw the actual notes, but my recollection is that Mr. Mauldin turned through some papers and notices and that he had *some* papers in his hands, although I can't say they were the particular notes he had in his hand, although that was my impression at the time. *The notes in question* were returned to Mr. Tobias *later*" (Italics added.)

From this testimony it is clear that the renewal notes executed by Mrs. Tobias were still in the possession of the American Bank & Trust Company on June 26th, the day after the bank closed, but evidence does not establish the contention of the plaintiff that the old notes were in the possession of the bank on the 26th of June, the day after the bank closed. On the other hand, we think it may reasonably be inferred from the entire record that the old notes executed by Mrs. Tobias were not in possession of the bank, American Bank & Trust Company, on the 26th of June, nor at the time the bank closed, June 25th. In this connection, we call attention to the fact that no part of the testimony of Mr. Tobias makes any reference to the $5,333.24 note executed by W. H. Nicholson, trustee, involved in this case, and only incidentally refers to the $3,000 note involved in the case, executed by Mrs. Tobias, in connection with the two notes involved in the *Georgetown Bank Case,* the testimony of Mr. Tobias having been taken in the *Georgetown Bank case* and by consent introduced in

this case, subject, however, to the objections interposed by the defendant.

But a decision in this case does not depend upon whether or not the securities in question were actually taken out of the possession of the American Bank & Trust Company before that bank closed and turned over to the defendant, the Westminster Loan & Trust Company, or its agent. As we view the testimony, considered in connection with the agreed statement of facts, the securities, the $3,000 note executed by Mrs. Tobias, and the $5,333.24 note executed by W. H. Nicholson, trustee, were either delivered unto W. W. Bradley, State Bank Examiner, for the Westminster Loan & Trust Company, before the American Bank & Trust Company closed, or were set aside for that purpose pursuant to the agreement made when Mr. Zimmerman, as liquidating agent, promised to issue the check and transfer the sum of $5,000 from the Westminster Bank to the American Bank & Trust Company, and, further, it can reasonably be inferred, and is the inference we draw from the testimony and entire record, that the notes in question were removed from the bank's vaults and placed on Mr. Mauldin's desk either at the time the check from the Westminster Loan & Trust Company was received by the American Bank & Trust Company or before the check was collected or paid.

It is our opinion after a careful study of the entire record of the case that the transfer of the notes involved herein did not constitute a preference under the assignment laws, but that the deposit in question was procured in good faith under an agreement to put up security for the same; that the officials of the American Bank & Trust Company made an honest effort to carry out this agreement, and that such was the purpose and intent when the notes involved were removed and separated from the other papers of the bank, placed on Mr. Mauldin's desk and later turned over to Mr. Bradley, State Bank Examiner, for the defendant, Westminster Loan & Trust Company.

Furthermore, an agreement having been made to secure the deposit at the time the deposit was procured equity and good conscience required that the agreement be carried out. Recognizing the familiar principle that "equity regards that as done which ought to have been done," under the facts of this case, it is clear that the defendant, Westminster Loan & Trust Company, is entitled to a lien on the notes in question as security to the deposit made in the American Bank & Trust Company, even should there be a question as to whether or not the securities involved were set aside and delivered to the defendant or its agent at the time the check issued by Mr. Zimmerman, liquidating agent, was received by the American Bank & Trust Company or before it was paid, or the American Bank & Trust Company was given credit for it in Richmond.

In support of the views herein expressed, we call attention to the following authorities: 10 R. C. L., 383; *Finley v. Moore*, 55 S. C., 195, 33 S. E., 362; *Delaire et al. v. Keenan*, 3 Desaus., 74, 4 Am. Dec., 604; *Littlefield v. Perry*, 88 U. S. (21 Wall.), 205, 22 L. Ed., 577; *Bank of Aynor, Ex parte*, 144 S. C., 147, 142 S. E., 239.

It is unnecessary to pass upon the other questions raised by the exceptions.

It is the judgment of this Court that the judgment of the Circuit Court be reversed; that the defendant, Westminster Loan & Trust Company, be, and is hereby, declared to have a lien on the notes involved in this case, note of Ethel M. Tobias, for $3,000, and note of W. H. Nicholson, trustee, for $5,333.24, and any proceeds derived therefrom, as security for the $5,000 deposit in the American Bank & Trust Company, and that the case be remanded for such further procedure as may not be inconsistent with the views expressed herein.

MR. CHIEF JUSTICE WATTS and MESSRS. JUSTICES COTHRAN and STABLER concur.

MR. JUSTICE BLEASE disqualified.