**UNITED STATES of America**

v.

**James FERGUSON, Principal, A–Bonding Service, Surety, and Bankers Fire & Casualty Insurance Company, Surety.**

**Crim. A. No. 5412.**

United States District Court,
S. D. Georgia,
Augusta Division.

July 16, 1975.

Elizabeth C. Chalker, Asst. U. S. Atty., Augusta, Ga., for plaintiff.

James T. Wilson, Jr., Wilson & Trotter, Augusta, Ga., for defendants.

## OPINION AND ORDER ON MOTION FOR JUDGMENT ON FORFEITED BAIL BOND

LAWRENCE, Chief Judge.

This is a motion by the United States for judgment against Bankers Fire & Casualty Insurance Company, as surety, for the unsatisfied portion of a forfeited bail bond filed in the criminal case of *United States vs. James Ferguson* (Augusta Division, No. 199). Bankers resists the motion and the rule to show cause.

A hearing was held before me at Augusta on May 15th. The record shows that on January 7, 1971, an appearance bond was executed by James Ferguson, a criminal defendant. As principal, he and the named surety (A–Bonding Co., John S. Wilson) acknowledged themselves to be bound to pay to the United States the sum of $5,000 in the event of breach of the condition thereof in failing to appear on a certain date before the United States Commissioner.

Upon breach of the condition, the bond was forfeited and the United States obtained a judgment against Ferguson and "A Bonding Service" in the amount of the penalty and costs. Execution issued against such parties on October 12, 1971. "A Bonding Service" (or A Bonding Co.) was the trade name of John S. Wilson who was a professional bondsman and is now deceased. Eventually the Government collected from Wilson a total of $2,495, leaving $2,505 owing on the judgment. On April 30, 1975, the United States moved for judgment for such balance against Bankers Fire & Casualty Insurance Company.

This case turns on the question of the liability of that Company to the United States under the appearance bond and under the power-of-attorney it gave to Wilson in connection with the bond with which we are here concerned.

On the printed form of the appearance bond is a space for signatures and opposite "Name of Surety" was typed "A Bonding Company" immediately below which appears the signature of John S. Wilson. Stapled to the bond is the power-of-attorney, dated January 4, 1971, executed by Bankers Fire & Casualty. Under its terms, Wilson was appointed as "its true and lawful Attorney-In-Fact for it and in its name, place and stead, to execute, seal and deliver for it . . as surety . . . a bail bond only . . .." The power-of-attorney was

required to be filed with the bond and retained as part of the court records. The attorney-in-fact was authorized to insert in the power-of-attorney the name of the person on whose behalf the bond was given. Blanks thereon were filled in showing the amount of the bond, the appearance date, the name of the defendant, the court and the offense charged.

Bankers Fire & Casualty had previously delivered a general power-of-attorney to Mr. Wilson which was renewable each year. The instrument authorized him to execute as its agent and attorney-in-fact bail bonds in a penalty not to exceed $50,000. It stated that all such bonds must be accompanied by "an individual, numbered power of attorney". The execution of bonds was to be binding on the Company as if they had been executed or acknowledged by it through its officers.

An affidavit by Curtis M. Ford, part-time Magistrate and formerly United States Commissioner at Augusta, is in the record. His signature appears on the appearance bond approved by him. Mr. Ford states that, pursuant to the authority granted to John S. Wilson under powers-of-attorney executed by corporate sureties, he (Wilson) had signed such bonds on at least four separate occasions. Deputy Clerk P. A. Brodie, Jr. states in an affidavit that it was part of his duties to approve and accept appearance bonds for criminal defendants and that it was his practice to accept only cash bonds, unencumbered realty bonds, or *bonds guaranteed by a corporate surety*. The guaranty usually took the form of a power-of-attorney appointing the local bondsman to act as agent for the corporate surety in signing bonds on behalf of the latter.

As earlier stated, Mr. Wilson personally signed the appearance bond in the name of A Bonding Co. rather than in that of Bankers or as attorney-in-fact for Bankers. Independent examination by this Court of the Clerk's records shows that in May and June, 1971, Mr. Wilson signed at least four appearance bonds to each of which was attached a power-of-attorney from Bankers. They were executed by him in the same manner as in the instant case. On the other hand, in 1969–1970 John S. Wilson, *Jr.* signed, under power-of-attorney from Resolute Insurance Company, sixteen appearance bonds in the following manner: " 'A BONDING SERVICE' by Resolute Insurance Co. of Hartford, Conn. By John S. Wilson, Jr. Authorized Agent".[1] This execution is itself ambiguous and is not consistent with the power-of-attorney given by *that* insurer.

At the hearing in this Court on May 15th a copy of a remittance report by A Bonding Service, dated January 11, 1971, was put in evidence. It had been mailed by John S. Wilson to Bankers. Such schedule shows that he collected a premium of $500 in connection with Ferguson's bond and that out of it Bankers received $100 as commission and $50 for its trust account. A check for those amounts accompanied the report. A copy of the bond and power was also furnished Bankers.

While the guarantee by a corporate surety of John S. Wilson's personal obligation as bondsman under Ferguson's appearance bond may have been intended by the parties, the *form* of accomplishing any such purpose fell quite short of properly effectuating it. The only surety named in the bond is "A Bonding Co." whose proprietor is Mr. Wilson. His signature appears immediately beneath the typed business name. The bond is devoid of any reference whatever to Bankers.

The difficulty here is that in executing the appearance bond Mr. Wilson did not follow the letter of the power-of-attorney under which he acted for Bankers Fire & Casualty. He was authorized as its attorney-in-fact to execute the appearance bond of James Ferguson "in its *name,* place and stead" and "on its be-

---

1. He is the son of John S. Wilson and was apparently engaged in the professional bonding business with his father.

half". (Italics supplied). The name of Bankers Fire & Casualty does not appear in the bond executed by Wilson under the trade-name of his professional bondsman's business—A Bonding Co.

■■■ "It is the general rule that a power of attorney must be strictly construed and strictly pursued . . . the act done must be legally identical with that authorized to be done". 3 Am. Jur.2d Agency § 29. The rule in Georgia is that the undertaking of a surety is *stricti juris. W. T. Rawleigh Company v. Overstreet,* 71 Ga.App. 873, 32 S.E.2d 574; *Barry Finance Company v. Lanier,* 79 Ga.App. 344, 347, 53 S.E.2d 694. Criminal bonds are strictly construed in Georgia. *Barnes v. United States,* 223 F.2d 891 (5th Cir.). On the other hand, no particular or formal phrase is required to create the contract of surety and courts may disregard formal expressions to ascertain the real intent of parties. *W. T. Rawleigh Company v. Overstreet, supra.* The form is immaterial if the fact of suretyship exists. Ga.Code Ann. § 103–104; 72 C.J.S. Principal and Surety § 33.

In *United States v. Jackson,* 465 F.2d 964 (10th Cir.) the defendant's father gave his son a check for the amount of the deposit required by the appearance bond. The father's name and address were typed on the bond as surety. However, he did not sign same and the Court held that, under these circumstances, he was not liable as surety. The situation here is quite different. The name of Bankers Fire & Casualty was not typed in upon the bond. However, that instrument was not the entire contract. An integral part of the whole was the attached power-of-attorney. "The act and deed [of the agent] in executing the bond must be construed in connection with the power of attorney". *Sasnett v. Owen,* 69 Ga.App. 741, 752, 26 S.E.2d 640, 647.

Wilson failed to execute the bond in the *name* of Bankers as was contemplated by the power. However, a strong element of ratification exists. As attorney-in-fact, he sent Bankers a copy of the Ferguson bond and listed the transaction in a report of "Powers executed by me". He also mailed a "check for your share of premium". Mr. Wilson's report to Bankers showed:

| Date | Power Number | Name | Amount | Premium | Company Comm. | Trust Account |
|------|-------------|------|--------|---------|---------------|---------------|
| 1/7/71 | 25254 | James Ferguson | $5,000 | $500 | $100 | $50 |

The amount so remitted was accepted by Bankers.

■■■ Under Georgia law, ratification by a principal relates back to the act ratified and takes effect as if originally authorized. The principal cannot repudiate in part but "shall adopt either the whole or none." Ga.Code Ann. §§ 4–303, 302. By retaining money paid after knowledge that its source was the principal's credit, through an unauthorized assumption of authority by an agent, the principal ratifies the act irrespective of any intent to do so. *American Exchange National Bank v. Georgia Construction and Investment Co. et al.,* 87 Ga. 651,

657, 13 S.E. 505. See also *Armour Fertilizer Works v. Maddox,* 168 Ga. 429, 148 S.E. 152.

■■■ If an agent fails to disclose his principal, a person dealing with the former may, when the fact is discovered, go against the principal under the contract. Ga.Code Ann. § 4–305. An agent acting within the scope of his authority may bind his principal in his individual capacity only, when it appears from the instrument that the principal and not the agent is intended to be bound. *Cochran v. Grand Theater Company,* 29 Ga.App. 481, 115 S.E. 926. I am under the impression that until shortly before the hearing

before me, the Government was unaware that that Company received a commission from A Bonding Service in connection with the bond.

Bankers says that the Government's claim against it is based on the power-of-attorney which merely refers to the bond of James Ferguson. Counsel contends that federal law does not permit it to execute such an undertaking as surety, the authority to bind a principal not being a bond itself under the Act of Congress (6 U.S.C. §§ 6–13). That statute provides that any recognizance bond or undertaking for the faithful performance of a duty specified by the laws of the United States is sufficient as far as the surety is concerned when executed or guaranteed by a corporation under the laws of any State and possessing power to guarantee bonds and undertakings in judicial proceedings. 6 U.S.C. § 6. The Act in no way restricts the authority of Bankers Fire & Casualty to execute appearance bonds in federal courts. It provides that any company executing or guaranteeing a bond is estopped to deny in any proceeding to enforce the liability assumed its corporate power to execute or guarantee such instrument. 6 U.S.C. § 12.

■ I am not persuaded by Bankers' argument that the United States is trying to treat the power-of-attorney as a bond. The power is, of course, no more than the principal's written authority to its agent. In no way does it affect the substantive obligation or condition of the bond itself. However, the two instruments must be read together. The power-of-attorney is relevant to the intent of the attorney-in-fact and to the matter of the legal effect of any ratification by Bankers of Wilson's execution of the bond on its behalf rather than in any personal capacity.

■ Counsel for Bankers also argues that the United States is precluded by estoppel by judgment and merger by

judgment from now asserting that it is liable as surety. It is contended that the prior judgment against "A Bonding Service" (on which the Government collected $2,495 from Wilson personally) was necessarily premised on a finding by this Court that the parties intended that John C. Wilson alone is liable as surety. Bankers says that any claim of the United States against it under the bond merged into the judgment against "A Bonding Service".

I have difficulty relating those principles to the instant case. Liability of Bankers was not in issue when the judgment was entered against A Bonding Service. Wilson had ostensibly executed the bond in his personal capacity. The relation of Bankers to the bond was suggested by the attached power-of-attorney but there was no disclosure at that time that A Bonding Service had shared the premium with the intended but undisclosed corporate surety. Perhaps what Bankers is talking about is estoppel by election of inconsistent remedies. In other words, having elected to go against the named surety (the agent) in his personal capacity and having obtained a judgment against Wilson and collected a portion of the amount due from him, the Government cannot turn around now and sue Bankers as the real surety or in the capacity of guarantor of Wilson's obligation as surety.

■ An essential ingredient of estoppel, in any event, is detriment or prejudice to one who asserts same. There must be inducement to change one's position for the worse. *W. T. Rawleigh Company v. Burkhalter*, 59 Ga.App. 514, 516, 1 S.E.2d 609.[2] See also 21 Am. Jur.2d Election of Remedies § 70; 31 C.J.S. Estoppel § 74. Here there was no harm or detriment to Bankers.

Indeed, if estoppel exists in this case, it would seem to me one that operates against Bankers' contention that it is not liable to the obligee as surety. On that

2. In that case case A attempted to hold B as a surety under a contract on which an action was brought against several persons as sureties. Following the dismissal of B on the theory that it was a guarantor rather than a surety, A sued B in the former capacity. The Court of Appeals ruled that no estoppel arose under the theory of election of remedies.

note, I return to whether, in the light of all the facts and circumstances of this case, Bankers is responsible for the unpaid balance of the judgment against A Bonding Service.

■ A. *Suretyship.* The bond and accompanying power-of-attorney must be read together as an integrated contract. As attorney-in-fact, Wilson had authority to bind Bankers as surety on certain bonds. Copies of such bonds and of the powers-of-attorney that were attached were sent to Bankers. The original instruments were filed in court. The Company raised no objection as to the form or execution thereof and received a commission from A Bonding Service in the way of a percentage of the premium. Such compensation was earned only when Wilson exercised his authority by executing a bond on behalf of Bankers as its attorney-in-fact. To justify its right to a commission on the transaction where the agent does not execute the bond so as to expressly name and identify his principal, as was contemplated by his written authority, the law presumes that there was a proper exercise of the power conferred unless it is clear that the agent intended to be personally bound as surety. This is not an equity case. But law and equity have been merged and "There is no longer, in federal practice, such a thing as a 'suit in equity.'" Charles Alan Wright *Law of Federal Courts* (1970) § 67, p. 281. The facts of this case warrant treatment in accordance with equitable principles and equity treats as done that which in fairness ought to have been done. 30 C.J.S. Equity § 106; 27 Am.Jur.2d Equity § 126. See also Ga.Code Ann. § 37–106; and *Sasnett v. Owen, supra,* 69 Ga.App. at 750, 26 S.E.2d 640. "The court considers as actually having been performed acts which have been directed or which have been agreed or intended to be done. . . ." 27 Am.Jur.2d § 126. Thus, an agreement to give security may, in a proper case, be deemed to have been executed by the giving of security. *Peurifoy v. Westminster Loan & Trust Co.,* 148 S.C. 100, 145 S.E. 706, 712.

B. *Guaranty.* It is possible that Wilson supposed that the practice he followed resulted in binding Bankers as guarantor of his personal obligation as bondsman under the appearance bond. Would he otherwise have signed the recognizance in his personal capacity rather than, for example, "individually and as attorney-in-fact for Bankers Fire & Casualty Insurance Company"? And, after the condition of the bond was violated, would Mr. Wilson have made payments to the obligee out of his own pocket in discharge of the obligation to it?

In accepting the bond as it was written and executed the court officials appear to have assumed that it satisfied their requirement that the bondsman's obligation on bail recognizances be guaranteed by a corporate surety. The guaranty theory of Bankers' liability is relied on by counsel for the Government in this case.

For its part, Bankers seems to argue that the form and outward appearance of things is what matters. It is not a guarantor of Wilson's obligation on the bond since the power of attorney, under which he acted, conferred no authority on him to bind Bankers by any sort of guaranty. In short, as far as it is concerned, whether the case be considered in the light of guaranty or of suretyship, everything that was done, including acceptance of $150 in commissions, legally speaking, amounted to nothing at all.

This Court cannot accept so negative and niggling a view of things. I readily agree that one is hard put to predicate liability here on the guaranty theory. Such a relationship may have been in the minds of some of those concerned but the bond and the power-of-attorney speak only the language of suretyship with not a word about guaranty. I do not think that the alchemy of estoppel, ratification or the practicable meaning given to the instrument by the parties can transmute an expressed surety relation into one of guaranty. Reformation of the bond to express the mutual intention of the parties as to guaranty is not

sought by the Government and the evidence before me fails to justify any such relief.

█ In return for the commission that Bankers received from A Bonding Service, Wilson was entitled to *something* rather than to nothing. Under the terms of the power-of-attorney, that something was the creation of a surety relation on the part of Bankers in connection with the appearance bond. I conclude that the law must regard and treat Wilson's action in executing the bond in his own name as an intended exercise of the authority given to him by his principal to bind it as surety thereon. Such a presumption is to be preferred to a result wholly contradictory to what is called for by the power-of-attorney. Bankers expected to be bound as surety on the bond and, under the facts of this case, expectation is, in the eyes of the law, transposed into realization. Upon that ground this Court bases its decision in favor of the Government's motion for judgment.

The motion has been submitted to the Court for decision without a jury. The findings and conclusions appearing in this Order are sufficient for the purposes of Rule 52 F.R.Civ.P.

Judgment will be entered in favor of the United States and against Bankers Fire & Casualty Insurance Company in the amount of $2,505 with interest from the date of entry thereof at 7% per annum and costs.