**UNITED STATES of America**

v.

**Michael BURNETT, a/k/a "Paul Fenton", Defendant.**

**No. 79 Cr. 54.**

United States District Court,
S. D. New York.

July 16, 1979.

William J. Werner, New York City, for sureties Dependable Ins. Co. and Accredited Surety and Cas. Co.

John S. Siffert, Asst. U. S. Atty., New York City, for the U. S.

MEMORANDUM OPINION

EDWARD WEINFELD, District Judge.

This is a motion by two surety companies pursuant to Rule 46(e)(2) of the Federal

---

Rules of Criminal Procedure to set aside the forfeiture of bonds posted by them to secure the appearance of the defendant, Michael Burnett, who, together with a co-defendant, was charged with a scheme and artifice to defraud by means of mail and wire communications. Burnett, who had a substantial prior criminal record, including a bail-jumping conviction, originally was held in $500,000 bail fixed by a Magistrate of this Court. Thereafter, following the assignment of the case to this Court, upon successive applications on behalf of defendant, the bail was reduced to $200,000. The defendant was released pending trial when the amount of the bail was furnished by the movants. As collateral, the sureties received a condominium apartment and other real estate in Florida owned by the defendant's former wife, Pauline Raymond, and the Texas residence of a business associate of his son-in-law, James Faulk. The movants urge that if the forfeiture is not vacated or reduced the burden of loss will fall principally upon those who gave the collateral.

A background reference: the charge against defendant involved fraud centering about foreign currency transactions. Necessary witnesses were located in foreign countries and presented unusual problems in trial preparation. Substantial costs were incurred by the Government in the course of the grand jury investigation and preparation for trial. Several foreign business men and banking and foreign officials flew to the United States on more than one occasion at Government expense. In addition, several witnesses traveled to New York from other parts of the United States. The Assistant United States Attorney traveled abroad in advance of trial to interview witnesses and to persuade a number whose testimony was vital to a successful prosecution to appear here for trial since they were beyond the subpoena power of the court.

After numerous motions made on behalf of defendant, the case was set for trial for April 2, 1979 in the hearing and presence of the defendant. Specific instructions were directed to him and his attorney to be prompt in attendance so that the trial could proceed with dispatch. On the morning set for trial, eight witnesses from foreign countries were here prepared to testify. The case was ready to go forward but defendant failed to appear. It is unnecessary for the purpose of this motion to state the circumstances attendant upon his nonappearance except to note that there is no doubt it was deliberate, calculated and wilful. It was an endeavor to obstruct or impede the administration of justice since defendant was aware that in large measure a successful prosecution turned upon the testimony of defrauded victims, the foreign witnesses, and the prospect of their returning for trial on another occasion was dim to say the least. The Government's estimate of the expenses for pretrial activities, trial preparation and subsequently for the apprehension of the defendant totals in excess of $100,000.

There is little to warrant the Court in granting the discretionary relief requested. Although the sureties were promptly notified of defendant's default and the forfeiture of their bonds, they and those who posted collateral played not the slightest part in his apprehension. That the defendant was finally brought to justice was due to effective work on the part of the FBI in cooperation with other official enforcement agencies and of the Bahamian authorities who effected defendant's deportation from that country to which he evidently had fled.

Those who put up collateral were fully aware of the risk they were undertaking in the event defendant fled. In fact, the risk factor was emphasized to them. When it was indicated that the bail as finally set at $200,000 was about to be met, the prosecution contemplated a hearing under *United States v. Nebbia,* 357 F.2d 303 (2d Cir. 1966), and notified the Court and counsel to this effect. But, upon consideration, the prosecution decided that it had insufficient proof to sustain a claim that the collateral was tainted. However, evidently out of an abundance of caution, the Assistant United States Attorney in charge of the matter and aware of the defendant's background and proclivities, contacted Mr. Faulk, who

pledged his home as collateral to the surety companies, and asked whether he understood the risk involved. Faulk acknowledged he did and was confident that Burnett would appear whenever required.

The Assistant also talked to an attorney for defendant's former wife who said he had advised his client against putting up her property as collateral; nonetheless she too gave collateral to the surety companies. Both parties then were aware of defendant's prior background which alone suggested the risk they assumed was greater than in the ordinary case. As for the surety companies, while they made no statement as to the amount received by them for writing the bond, they, of course, did receive a premium for the risk they undertook.

Parenthetically, it may be noted that the Government's suspicion that the defendant, an habitual confidence man who has fleeced many, has substantial sums of money both here and abroad, is not without substance based upon deposits and withdrawals running into millions of dollars as enumerated in the affidavit of the Assistant.

What this Court said on a prior occasion in a similar situation bears repetition:

> The sanction of a forfeiture is required not only to vindicate the public interest, but to assure that sureties, whether professional or family and friends, will be vigilant at all times to assure the appearance of defendants if and when required. The failure of a defendant to so appear is an interference with the due, prompt and efficient administration of justice; this is an injury to the public, entirely apart from any expense to which the government is put to apprehend the defendant.

*United States v. Public Service Mutual Ins. Co.*, 64 Crim.Misc. # 2 (126) (S.D.N.Y.1968); *see United States v. Yim*, 348 F.Supp. 708 (C.D.Cal.1972); *United States v. Ciena*, 195 F.Supp. 511 (S.D.N.Y.1961).

Motion denied. So ordered.