STATE of Rhode Island

v.

Keith WERNER

Re: Bail Forfeiture (Joseph Musone).

No. 93–189–Appeal.

Supreme Court of Rhode Island.

Nov. 22, 1995.

tice abused his discretion in refusing to set aside the bail forfeiture pursuant to Rule 46(g)(2) of the Superior Court Rules of Criminal Procedure, (2) that the motion justice overlooked or misconceived material evidence or was clearly wrong in applying the set-aside factors for all or some of the forfeited bail, and (3) that the motion justice erred and abused his discretion in ordering that the forfeited bail funds be placed in the violent-crimes indemnity account. For the reasons set forth below, we affirm the Superior Court judgment. This case is both factually and procedurally intense; therefore, we set out in precise detail the pertinent aspects of both the facts and the procedure.

In November 1990 indictment No. K1/90–804–B charged Keith Werner (Werner) with two counts of robbery, conspiracy, and carrying an unlicensed pistol, which collective events we shall refer to in this opinion as the Kent robbery case. After his arraignment on the charges, Werner was held without bail and sent to the Adult Correctional Institutions (ACI). Subsequently bail was set at $250,000 with surety, and Werner was remanded to the ACI. Richard Corley (Corley), a criminal defense attorney, was retained to represent Werner in the Kent robbery case.

Andrea Mendes, Spec. Asst. Atty. General, Aaron Weisman, Asst. Atty. General, for Plaintiff.

Lauren Jones, Providence, for Defendant.

## OPINION

MURRAY, Justice.

This is an appeal by Joseph Musone (Musone) from a judgment entered by the Superior Court granting the state's motion to declare a forfeiture of bail to the state in the amount of $250,000. On appeal Musone asserts (1) that the Superior Court motion jus-

On August 2, 1991, Musone, a professional bail bondsperson [1], posted a $250,000 surety bond using real estate located in North Providence to secure Werner's release. When Musone posted the bail, he executed a bail-recognizance form whereby he agreed to comply fully with the conditions of Werner's release, including the condition that Werner be present in court for all scheduled court sessions in the case.[2]

At the time he was released on bail, Werner had at least one other criminal charge pending in Rhode Island, a 1990 felony assault charge in Providence County, which we shall refer to in this opinion as the Provi-

---

1. Given the expanding role of women in traditionally male-dominated professions, we shall now adopt the designation "bondsperson" when referring to sureties posting bail.

2. There is some confusion in the record concerning the bail-recognizance document executed by

Musone on August 2, 1991. Apparently that document was initially misfiled in a District Court file. However, Musone testified on direct examination that he was aware that the $250,000 bail he posted for Werner was for a Superior Court indictment.

dence assault case. Corley also represented Werner in the Providence assault case.

Upon his release on bail from the ACI on the Kent robbery case, Werner left Rhode Island to reside in Everett, Massachusetts, apparently with court permission. Initially Werner maintained telephone contact with Musone once a week for a period of about seven or eight weeks. However, Werner stopped calling Musone approximately the first week in October 1991.

Sometime after Werner's release on bail in the Kent robbery case, he was arrested and incarcerated in Massachusetts on charges of assault with a dangerous weapon and armed assault. The Massachusetts offense was allegedly committed by Werner after Musone had posted bail in the Kent robbery case.

In the meantime, on September 23, 1991, a Superior Court motion justice issued an arrest warrant for Werner as a result of Werner's failure to appear at a trial-calendar call for the Providence assault case. Corley was present at the trial calendar call and had advised the motion justice that Werner was incarcerated in Massachusetts. Corley was aware that an arrest warrant had been issued for Werner in the Providence assault case.

After the telephone calls from Werner to Musone had ceased, Musone contacted Corley and was advised by Corley sometime in October 1991 that Werner was incarcerated in Massachusetts; however, Corley did not inform Musone that Werner had failed to appear for the September 23 trial-calendar call for the Providence assault case, nor did he advise Musone that there were any arrest warrants issued for Werner.

When Musone learned that Werner was incarcerated in Massachusetts, he did not inform the court, the police, the Attorney General's office, or anyone in a position of authority in Rhode Island of Werner's incarceration in Massachusetts. Musone asserted that even though Werner was incarcerated in Massachusetts, he had no intention of withdrawing the surety bail he posted in the Kent robbery case. For the remainder of the month of October and all the month of No-vember 1991, Musone had no contact with Werner.

Sometime during the month of November 1991, Corley appeared at a trial-calendar call for the Kent robbery case and called the case ready even though he was aware that Werner was incarcerated in Massachusetts. Corley assumed that Werner would successfully make bail in the Massachusetts case and be available for trial in the Kent robbery case. Corley did not inform the court or the prosecutor for the state of Werner's incarceration.

Subsequently, one or two weeks after the calendar call, during a conference on a different matter, Corley advised the prosecutor for the state and the motion justice of Werner's incarceration in Massachusetts, whereupon the prosecutor requested an arrest warrant be issued for Werner in the Kent robbery case. An arrest warrant was not issued at that time; however, the motion justice indicated that one would issue if Werner did not appear in court within a period of one week. Werner did not appear in court for the Kent robbery case, and a warrant was issued for him on December 10, 1991. Although Corley had not specifically been advised by the court or the state that an arrest warrant had in fact been issued in the Kent robbery case, Corley believed that one had probably been issued by December 11, 1991.

Around the same time that the warrant was issued in the Kent robbery case, Werner contacted Corley from Massachusetts, requesting that Corley contact a bail bondsperson on his behalf regarding bail in the Massachusetts case, which was set at $10,000 cash. Corley contacted Musone and arranged for Musone to post $10,000 cash bail for Werner in the Massachusetts case.

On December 11, 1991, at approximately 12:30 p.m., Musone met with Corley at Corley's office. During that meeting, Corley gave Musone $4,000 in cash, which amount represented Musone's fee for posting the $10,000 cash bail. Corley also advised Musone that he believed an arrest warrant had probably been issued for Werner in the Kent robbery case for Werner's failure to appear at the November 1991 calendar call and he suggested that Musone attempt to confirm the existence of any arrest warrants on Wer-

ner. Musone placed two telephone calls to the bail commissioner for the prison where Werner was incarcerated in Massachusetts and inquired whether there were any existing arrest warrants on Werner. Musone received negative replies. Musone did not speak with anyone in authority in Rhode Island on December 11, 1991, or at any time subsequent to that date to confirm the existence of any Rhode Island arrest warrants.

That same day, on December 11, 1991, at approximately 5:30 p.m., Musone traveled to Massachusetts and posted the cash bail for Werner, unaware of the existence of any Rhode Island warrants. Musone then drove Werner to Corley's office in Providence pursuant to a prior agreement between Corley and Musone. Musone testified that it was his intention to have Werner brought back to court to have the December 10, 1991 arrest warrant quashed and to schedule a new court date. When Musone delivered Werner to Corley's office, the three men discussed Werner's surrender the following day. Musone asserted that Corley promised he would walk Werner into court the next morning to have the Kent arrest warrant quashed. Musone left Werner with Corley.

Four or five days later Musone spoke with Corley about Werner's surrender and Musone was advised by Corley that Werner had not appeared in court to quash the warrant. During this four-or five-day period, Musone did not check with either the courts or the Attorney General's office to determine whether an arrest warrant had in fact been issued for Werner.

The next and the last time Musone heard from Werner was around December 18, 1991, when Werner contacted Musone from Cape Cod, Massachusetts. During that telephone conversation, Werner stated that he would turn himself in after the holidays. However, Werner never presented himself to remove the arrest warrant in the Kent robbery case.

Musone testified that sometime between December 11, 1991, and March 1992 he hired a private investigator, Steve Limoges (Limoges), to travel to Werner's last known Massachusetts address to locate Werner. However, Limoges himself testified that Musone had never hired him to locate Werner.

Limoges further testified that Musone approached him during the Superior Court hearing immediately before Limoges was scheduled to testify to request that Limoges corroborate Musone's earlier testimony. Limoges responded to Musone that he would testify truthfully.

Musone did not check to verify whether Werner presented himself to remove the warrant during the month of January 1992 or the month of February 1992 because Musone was on vacation for two weeks during each of those months.

Thereafter, on March 10, 1992, Musone received a telephone call from Frederick Haibon (Haibon), captain of the records and identification unit at the ACI, seeking information about Werner's whereabouts. Haibon told Musone that Werner was considered a chief suspect in a crime committed in Warwick sometime in March 1992. Musone provided Haibon with at least one Massachusetts address at which Werner might be located. Haibon relayed the information he received from Musone to Warwick police detectives.

Werner was subsequently located and apprehended by Massachusetts State Police and charged with a March 1992 crime committed in Warwick. The state then lodged detainers with authorities in Massachusetts for Werner for both the Providence assault case and the Kent robbery case. In addition, the state moved to declare forfeiture of the bail in the Kent robbery case pursuant to Rule 46(g) of the Superior Court Rules of Criminal Procedure on the basis of Werner's failure to appear at the November 22, 1991 trial-calendar call. In response Musone filed a timely motion to exonerate pursuant to Rule 46(h) of the Superior Court Rules of Criminal Procedure.

On September 23, 1992, a hearing commenced before a Superior Court motion justice, and testimony was presented over several days on the state's motion to declare forfeiture. After applying the set-aside factors outlined in *State v. Saback*, 534 A.2d 1155 (R.I.1987), the motion justice granted the state's motion to forfeit bail and ordered that the entire amount of the forfeited bail be

paid into the violent-crimes indemnity account (the account) established by G.L.1956 (1981 Reenactment) § 12–25–12, as amended by P.L.1984, ch. 258 § 1. Judgment was entered against Musone in the full amount of $250,000, from which Musone duly filed the instant appeal.

During the pendency of the instant appeal, Werner was tried and convicted in the Massachusetts case and sentenced to prison. Werner was later extradited to Rhode Island and convicted in December 1993 of all counts in the Kent robbery case. He was sentenced to a prison term to be served consecutively with his sentence in Massachusetts.

Premised upon Werner's apprehension and subsequent convictions in this state, Musone filed a motion in this court in January 1994, seeking a limited remand to the Superior Court to present a motion to remit the bail forfeiture and to be exonerated on the bail.

On appeal, Musone first argues that the motion justice abused his discretion when he did not set aside some of or all the forfeited bail pursuant to Rule 46(g)(2) because justice did not require the enforcement of the forfeiture. In this regard Musone complains that there is no reasonable relation between the full forfeiture of the bail and the legitimate expenses incurred by the state to regain custody of Werner. It is Musone's contention that forfeiting the full amount of the bail in the instant case fails because it provides revenue to the state treasury, for which bail is not intended, and because it is tantamount to a punishment of the surety. Because the purpose of the bail has been fulfilled, Musone contends forfeiture of the entire amount of the bail constitutes an abuse of discretion that must be vacated. In his second basis of appeal, Musone argues that the motion justice misconceived or overlooked material evidence or was clearly wrong in applying the set-aside factors. Because these two issues are interrelated, we dispose of them jointly in this opinion.

■ General Laws 1956 (1981 Reenactment) § 12–13–16.1, as amended by P.L.1986, ch. 435, § 1, and Rule 46(g)(1) delineate the circumstances and procedure by which bail may be forfeited upon a breach of a condition of recognizance. Pursuant to Rule 46(g)(1), the Superior Court shall upon motion of the attorney for the state declare a forfeiture of the bail by the bondsperson if there is a breach of condition of a recognizance. Rule 46(g)(2), however, gives a court wide discretion in determining whether to grant relief after declaring a forfeiture by specifically allowing a court, if it appears that justice does not require enforcement of a forfeiture, to set the forfeiture aside on such conditions as it may impose. *In re Procaccianti,* 475 A.2d 211 (R.I.1984). "To reverse the trial court's refusal to set aside or remit, we must find an abuse of discretion." *United States v. Frias–Ramirez,* 670 F.2d 849, 852 (9th Cir.1982) (citing *United States v. Stanley,* 601 F.2d 380, 382 (9th Cir.1979)). A trial court abuses its discretion when it acts arbitrarily or capriciously. *Id.* (citing *U.S. v. Parr,* 594 F.2d 440, 444 (5th Cir.1979)). The surety bears the burden of establishing an abuse. *Id.*

■ We have previously articulated the criteria a trial justice employs when he or she determines whether to set aside a bail forfeiture. Among the factors a trial justice may consider are the cost, the inconvenience, and the prejudice suffered by the state as a result of a defendant's breach of a condition of his or her recognizance, whether the surety was provided by family and friends rather than by a bondsperson, and any additional mitigating circumstances that may be present. Additional factors a court may consider include the issues of whether the defendant's breach of the bond condition was willful; whether a professional bondsperson, acting as a surety, participated in a defendant's apprehension; and whether a defendant failed to appear, thus interfering with the prompt administration of justice. *Saback,* 534 A.2d at 1157; *In re Procaccianti,* 475 A.2d at 213.

■ We are persuaded by several considerations to conclude that the motion justice did not abuse his discretion. We first note that Musone accurately states in his appellate brief that the purpose of bail is to secure the presence of the defendant in court for trial. *Bridges v. Superior Court,* 121 R.I. 101, 396 A.2d 97 (1978). Where Musone's

argument fails, however, is in his assertion that there must be a relationship between the amount of bail ultimately forfeited and the costs incurred by the state associated with a defendant's violation of his or her recognizance. This has never been this court's posture concerning bail forfeiture. Instead, we have suggested that it is the motion justice's task to evaluate the unique circumstances of each case thoroughly and to analyze carefully *all* of the various factors outlined in *Saback* and *Procaccianti* in order to determine whether to set aside some of or all the forfeited sum of bail. In the instant case the record indicates that the motion justice was overtly mindful of his duty to evaluate each of the factors in the set-aside bail-forfeiture analysis.

■ With respect to the cost factor, although it is true that the state was put to minimal expense, $200, to secure custody of Werner, cost to the state is only one of *several* factors in the set-aside bail-forfeiture analysis. Indeed, it has been held that the government need not show specifically what costs it has incurred. *See Stanley,* 601 F.2d at 382 (District Court's refusal to remit all or part of the forfeited bail upheld when there was no showing of specific prejudice, cost, or inconvenience to the government resulting from principal's breach because no explanation or factors mitigating principal's breach were offered). Accordingly, total bail forfeiture may still be appropriate in certain cases, notwithstanding the lack of cost to the state if circumstances so warrant.

In his bench decision the motion justice specifically noted that the bail was provided by Musone, who was acting as a professional bail bondsperson, and not by family or friends. As such, it is not unreasonable to conclude that Musone should have been fully cognizant of his responsibilities and the consequences of his breach of the conditions of the bond.

Furthermore, the motion justice opined that the breach of the bail recognizance in the instant case by Werner was willful. In his appellate brief, Musone attempts to argue that there was no evidence demonstrating the willfulness of Werner's breach. In this vein Musone ignores the undisputed evidence in the record which establishes that Werner was aware that at least one warrant had issued for him. Musone himself testified that during the December 11, 1991 meeting in Corley's office there was a discussion among Corley, Musone, and Werner about Werner's surrender the following day. Musone also overlooks the evidence that Werner called him around December 18, 1991, from Cape Cod, Massachusetts to inform him that he would turn himself in to Rhode Island authorities after the holidays. Thus Werner was plainly aware that he was breaching the conditions of the recognizance when he surreptitiously disappeared for approximately three months, failing to contact Musone or to advise the court of the reason for his absence. This is certainly not a case in which there was a showing that Werner's absence was excusable and manifestly sufficient to vacate and set aside the order of forfeiture. *See, e.g., People v. Wilcox,* 53 Cal.2d 651, 349 P.2d 522, 2 Cal.Rptr. 754 (1960) (order of forfeiture vacated and set aside where there was a sufficient showing that the defendant's inability to appear personally was a result of his continuing illness).

It was also noted by the motion justice that Musone did not participate in Werner's apprehension. In fact, Musone's effort in bailing Werner out of jail in Massachusetts led to Werner's disappearance, and his lack of diligence enabled Werner to commit further criminal activity while he was out on bail. Thus, we cannot credit Musone with attempting to deliver Werner to Rhode Island authorities. Moreover, rather than search for Werner in the early months of 1992, Musone vacationed for two weeks in both the month of January and the month of February. Although it is true that Musone was considered "instrumental" by Haibon in the March 1992 recapture of Werner for having provided Haibon with Werner's Massachusetts address, we note that Musone testified that he literally "did nothing" to locate Werner for the three months that he was at large, notwithstanding that he had an address for Werner in Massachusetts. These facts demonstrate a blatant lack of diligence and good faith by Musone in performing his part of the contract with the court. Accord-

ingly, like the motion justice, we are unimpressed with Musone's role in Werner's eventual apprehension.

Furthermore, the motion justice found that Musone testified with less than full candor. Specifically, the motion justice found Musone's assertion that he was unaware of the procedure for withdrawing bail not credible. Moreover, the motion justice also commented that he would be surprised if the state did not take some action against *Musone* himself for perjury which he believed Musone committed when he testified about allegedly hiring Limoges to locate Werner. We would also note that the motion justice found that there existed no mitigating circumstances which would warrant setting aside the forfeiture. All these facts buttress the motion justice's order of forfeiture.

Musone's contention that the motion justice misconceived or overlooked material evidence or was clearly wrong in applying the set-aside factors is not supported by the record before this court. There exist no facts in the record which would constitute an abuse of judicial discretion. In the totality of the circumstances of this case, we do not conclude that the motion justice acted arbitrarily or capriciously when he ordered the forfeiture.

Because Musone promised, for a substantial fee, to produce Werner and through his own fault failed to do so, Musone was required to abide by the second part of his promise, which called for the payment in full of the $250,000 set forth in the recognizance. *Procaccianti,* 475 A.2d at 213.

■ Responding to Musone's argument that the forfeiture in this case is tantamount to a punishment and a penalty, what we stated in *Procaccianti* warrants repeating in the instant case.

" 'The sanction of a forfeiture is required not only to vindicate the public interest, but to assure that sureties, whether professional or family and friends, will be vigilant at all times to assure the appearance of defendants if and when required. The failure of a defendant to so appear is an interference with the due, prompt and efficient administration of justice; this is

an injury to the public, *entirely apart from any expense to which the government is put to apprehend the defendant.'* " (Emphasis added.) *Procaccianti,* 475 A.2d at 213 ( quoting *United States v. Burnett,* 474 F.Supp. 761, 763 (S.D.N.Y.1979)).

The bail set in this case was high because of the seriousness of the crimes for which Werner was charged in the Kent robbery case. Given the large sum of the bail, Musone should have realized the awesome risk he accepted and the importance of ensuring that he keep his promise with the court that Werner appear when required. Total forfeiture of the entire amount of the bail is a sanction Musone assumed when he agreed to the conditions of the bond. We are of the opinion that in this case the forfeiture serves an important deterrent purpose. *See United States v. Gambino,* 17 F.3d 572, 575 (2nd Cir.1994) ($2 million bail forfeiture upheld when judge applied relevant factors, because of high deterrent value of total forfeiture).

We disagree with Musone's observation that confirmation of the instant bail forfeiture will discourage bondspersons from providing assistance to criminal defendants. We do not believe the forfeiture in this case will have a chilling effect on the willingness of a bondsperson to assist criminal defendants to exercise their constitutional right to bail. Rather, we are of the opinion that it will instead encourage a bondsperson to assess with greater certainty the value of security given by defendants and to encourage him or her to evaluate the likelihood of a defendant's breaching a bail condition. It will also motivate a bondsperson to take reasonable precautions to ensure a defendant's appearance in court when required and to cooperate fully with the state in its efforts to recapture a defendant who breaches the conditions of a recognizance. *United States v. Castaldo,* 667 F.2d 20, 22 (9th Cir.1981).

■ It is next contended by Musone that the motion justice committed error by ordering the forfeited bail paid into the account because (1) there is no statutory authority for the depositing of the judgment funds into the account; (2) bail forfeiture is not a revenue source for the state, nor is it a punishment for the bondsperson; and (3) without

specific statutory authority, forfeited bail cannot be used to compensate crime victims. Musone complains that the motion justice's determination that the bail be deposited into the account demonstrates the erroneous basis for the decision to order the full forfeiture of Werner's bail and his abuse of discretion in failing to set aside any of the forfeited bail. Musone contends that he raises this issue to establish the error in the underlying decision to forfeit the entire sum of the bail. We find no merit in this argument.

General Laws 1956 (1981 Reenactment) § 12–13–10, as amended by P.L.1982, ch. 387, § 1, is the statutory provision relating to bail and it provides, inter alia, that

"[u]pon the default of the defendant the court before which he [or she] is recognized to appear may, at any time thereafter, order the money deposited as aforesaid or in the discretion of the court the entire amount of the bail set to be forfeited, and such money shall thereupon be paid to the *general treasurer.*" (Emphasis added.)

Section 12–25–12 provides for the establishment of the violent-crimes indemnity account *within the general fund* for the purpose of paying awards decreed by the court.

Musone accurately states in his appellate brief that § 12–13–10 by its terms applies only to cash bail and mandates that cash bail which has been forfeited be deposited into the general fund. Musone also observes that there is no parallel provision addressing forfeited surety bail since the statute is silent on the issue of how surety bail should be disposed. Because there is no specific statutory directive with respect to the disposition of forfeited surety bail, we are of the opinion that the motion justice's order to deposit the full amount of the forfeited bail into the account is fully consistent with the purpose of § 12–13–10 since the account is established within the general fund. Moreover, we reject Musone's contention that the motion justice's order is indicative of his intent to punish the surety and to provide revenue to the state since there is ample evidence supporting the order of forfeiture as delineated above in this opinion.

■ Through a motion for a limited remand, Musone lastly asks this court to remand the case to the Superior Court to enable him to pursue a motion to remit bail pursuant to Rule 46(g)(4) of the Superior Court Rules of Criminal Procedure. The purpose of the motion to remit is to bring to the trial court facts that occurred subsequent to the forfeiture and set-aside determination which Musone contends bear on the validity of the forfeiture. The state objects to Musone's intended motion to remit on the basis that the motion justice has already given full consideration to the set-aside factors so that further consideration is unnecessary. We agree with the state and deny Musone's motion for a limited remand.

Under Rule 46(g)(4) the court may remit the forfeiture after the entry of judgment, in whole or in part, under the same conditions set forth in Rule 46(g)(2) prior to the entry of judgment. Musone recognizes that the same analysis would be employed by the motion justice in a motion to remit the bail. However, he nevertheless urges this court to remand the case to the Superior Court upon the premise of Werner's extradition from Massachusetts to Rhode Island and his convictions in the Kent robbery case.

We are of the opinion that Werner's extradition to Rhode Island from Massachusetts and his subsequent convictions in the Kent robbery case after the judgment was entered do not warrant remission in the instant case. We premise our holding on several considerations. Here, at the time of the hearing on the state's motion to declare forfeiture the motion justice was aware of Werner's apprehension and subsequent incarceration in Massachusetts. He was therefore aware that Werner would eventually be extradited to Rhode Island in order to be tried on the charges against him, including the charges in the Kent robbery case for which the bail was posted. Notwithstanding the foregoing facts, the motion justice ordered a total forfeiture. Thus it is apparent that Werner's extradition to Rhode Island would have had no bearing upon the motion justice's decision to order the forfeiture.

We are inclined to agree that in certain instances a remand may be appropriate after

the entry of judgment, for example, in a case in which a bondsperson acts with diligence to secure the custody of a fugitive defendant. *See Sifuentes–Romero v. United States,* 374 F.2d 620, 621 (5th Cir.1967) (partial remission appropriate when surety later produced defendant); *Franco v. United States,* 342 F.2d 918, 920 (D.C.Cir.1964) (justice does not require forfeiture be maintained when bondsperson was diligent in returning defendant a few days after forfeiture). This, however, is not such a case inasmuch as the motion justice was apparently convinced, as we are, that Musone did not act with diligence and good faith to return Werner to Rhode Island authorities. Moreover, this court held long ago that a surety in a "criminal cause" cannot be discharged after the recognizance has been defaulted by merely surrendering the principal. *See State v. McGuire,* 16 R.I. 519, 519–20, 17 A. 918, 918 (1889).

In sum, we hold that because none of the facts or circumstances upon which the motion justice premised his decision have materially changed, a remand to the Superior Court to enable Musone to pursue a motion to remit is unwarranted. We therefore deny Musone's request for a limited remand.

For these reasons Musone's appeal is denied and dismissed, and the judgment appealed from is affirmed. The papers of the case are remanded to the Superior Court.

Justice LEDERBERG was unable to be present at oral argument, but participated on the basis of the briefs.