Opinion of Chief Justice.
The writ of scire facias in this case, was sued out on the alleged forfeiture of a recognizance entered into by the-defendants at a court of Oyer and Terminer and GeneralGaol Delivery of the county of Middlesex, in December, 1826, whereby they “severally acknowledged themselves to owe to the state of Hew Jersey, the sum of $3,000 each, to be levied of their several goods and chattels, lands, tenements, hereditaments, and real estate,” with condition for the appearance of Joshua Mersereau, “ before the Supreme-Court at Trenton, on the second Tuesday of May then next, then and there to stand the traverse of a certain indictment against him for a misdemeanor, stand to and abide the judgment of the court, and not depart the court without leave.”' The writ recites the default of Mersereau, and of the recognizors to produce him; and commands the sheriff to make *151 known to the recognizors to be before the Supreme Court, on a named day, “ to shew or allege any matter or thing they have, sufficient to discharge them from their said recognizance, or why the said recognizance should not be forfeited and judgment final given thereupon against them, as in case of debt, for the said sum of 83,000 each; and execution issue thereupon accordingly; pursuant to the statute in such case made and provided.”
The recognizors appeared and pleaded in bar, “ that there was not on the second Tuesday of May, in the year of our Lord, 1827, mentioned and referred to in the said declaration on scire facias, nor at any other time, either before or since that day, pending in the Supreme Court of Judicature of New Jersey, any indictment against the said Joshua Mersereau, for a misdemeanor, or for any other crime or matter, and that there was not on the said day, or at any other time, either before or since, any other matter or thing pending in the said Supremo Court before the justices thereof, brought or exhibited against him the said Joshua Mersereau, or for him the said Joshua Mersereau to answer unto.”
*A replication, on the part of the state, was filed, [*128 setting forth that at a court of General Quarter Sessions of the Peace of the county of Middlesex, in September, 1826, an indictment, which is stated at large, for a misdemeanor, was found against Mersereau, which was sent, according to law, to the court of General Gaol Delivery of the county, on the second Tuesday of December, then following; and that the said indictment was on the second Tuesday of May, 1827, and still is pending in the said court of General Gaol Delivery, and that Mersereau hath not, as yet, answered or pleaded thereto.
To this replication there -was a general demurrer.
On the part of the defendants, it is insisted, that the declaration is defective, inasmuch as a joint writ has boon *152 .issued against them; whereas the recognizance being several, separate and distinct writs of scire facias, should have been sued out, against each of the recognizors.
To avoid misapprehension, it is proper at once to ascertain vthe nature of the present writ. It is not joint; in other words, it does not seek a joint judgment and execution ;against them for the sum mentioned in the recognizance; nor does it necessarily require them to answer'or defend themselves jointly. Although several persons are named in it; yet is its nature several; and the judgment sought is ■against each for the specified sum, with execution accordingly. Such are its terms. The distinction will be perhaps more obvious, when we come to look into the precedents.
In the investigation of this subject, it will be readily seen and conceded, that the course of procedure should be governed by the settled practice, if such there be; that any supposed force or propriety of abstract reasoning, should yield to approved precedents; for whether notice to the recognizors to appear and defend themselves against the enforcement of their forfeited recognizance is given by one writ or by several, cannot, as respect them, be of vital importance, if they may, in either mode, sever in their ■defences, and each in case of failure be subjected only to a recovery against him, by judgment and execution, of the .amount for which he had bound himself.
In Tidd’s Practical Forms, 396, is a precedent of a scire ^129] facias *against bail on recognizance. It i-ecites that they became pledges and mauucaptors, and each of them by himself became pledge and manucaptor for C. D. [the defendant] and then and there acknowledged themselves to awe, and each of them did acknowledge himself to owe, to A. B. [the plaintiff] the sum of -•-; and the command of the writ is that the sheriff, “ make known to the said E. E. and Gr. H. [the bail] that they be, &c., to shew if they have or know, or if either of them hath or knoweth, of anything to say 'for themselves or himself, that is to say,' *153 the said E. F. why the said sum of -by him in form aforesaid acknowledged, should not be made of his lands and chattels, and the said Gt. II. why the said sum of --by him in form aforesaid acknowledged, should not be made of his lands and chattels, and levied to and for the use of the said A. B. according to the force, form and effect of the said recognizance.” In Arch. pr. forms 256, and in Imp. C. B. 503, are to be found similar precedents. In Lilly’s Entries-380, 404, are entries of similar writs of scire facias purporting to have been taken from the original records.
In Tidd 406, is given the form of judgment on scire facias against the bail severally. “ Therefore it is considered that the said A. B. have execution against the said E. F. and G. H. that is to say, against the said E. F. of the said sum ■of-by him in form aforesaid acknowledged, and against the said G. II. of the said sum of --- by him in form aforesaid acknowledged, according to the force, form and effect of the said recognizance, &c.” In Archb. 258, 260, and Lilly, 380, 404, are judgments substantially the same.
In Tidd 413 and Archb. 262, are precedents of writs of fieri facias against bail, “to make'-- of the goods and chattels of E. F. and-of the goods and chattels of G. II.” In Imp. C. B. 503, is a fi. fa. against bail to make --of the lands and chattels of A. and- of the lands and chattels of B. “ which said several sums they, &c., heretofore, &c., before Alexander Lord Loughborough and his companions, then our justices of the bench at Westminster, severally acknowledged themselves to owe to William Read, to be made of their and each of their lauds and chattels.”
In these books of practical forms will also be found wilts of scire facias, judgments and executions, against bail jointly, that is *to say, “to shew? why, &c., the said [*130 A. B. should not have execution against' the said E. F. and II. for the damages aforesaid, according,” &c. — “ that the said A. B. have his execution against the said E. F. and G. *154 H. of the damages aforesaid, according,” &c. — a.nd that the-sheriff do “ make of the goods and chattels of E. E. and Gr. H. the sum of-1."
From a review of these precedents, we learn, that against a plurality of recognizors there inay be one writ, one judgment, and one execution, several indeed in nature and effect.. If it be observed that the recognizances in the instances referred to were joint and several, the fact is admitted; but what is the conclusion ? When a recognizance is joint and several, the party entitled to the benefit of it may elect to-consider it either joint or several, and must, at the proper-period, make such election. Having done so, he is after-wards to suit his procedure to the election he has made.. Thus, if he proceeds on the recognizance by action ; when joint, he is to include all recognizors in one writ; when several, he is to prosecute several actions; when joint and several, he may have an action against all or against each,, at his pleasure. If he proceeds by scire facias, one writ may be used, but should be either joint or several in its-form, according to the purpose of the plaintiff; although this strictness does noes not seem in all cases to have been-held indispensable.
Archbold says; “It is not necessar}^ to have a separate'scire facias against each of the bail:” And “if the proceedings against the bail have been by scire facias against both, the execution may be either joint against both, or several against each, for the purport of the scire facias is to have execution according to the form and effect of the-recognizance.” 1 Arch. pr. 292, 293. Sergeant Williams in his note on 2 Saund. 72, b. says, “ the plaintiff is at liberty to bring either one action of debt against all the persons bound in the recognizance or -several actions against each of them; but one scire facias is sufficient, because the-recognizance upon which the action is founded being joint- and several, and the purport of it being to have execution *155 according to the form and effect of the recognizance, it therefore follows, that although the scire facias be joint, the execution may be several.”
In the case of Gee v. Fane, 2 Keble, 274, 1 Levinz, 225,. the *scire facias was against both bail, and the judg- [*131 ment was, that the plaintiff should have execution against them according to the form of the recognizance. The plaintiff took a ea. sa. against one of them, which he moved to supersede. But the court, according to Keble, said, “ a scire facias never goeth out against one.” And according to Levinz, “this is not a judgment to recover, but to have execution, and that is to be according to the recognizance, either joint or several. Where the judgment is joint, so-ought to be* the execution. But the recognizance on which this scire facias issued, as upon a judgment, being joint and several, although the scire facias was joint, yet the execution may be several, as the record upon which it issues; and, therefore, the execution in this case was ruled to stand good.”
The case of The King against Young § Glennie, 2 Anst. 448, cited by the counsel of the defendant, does not support or countenance, either in the question decided, or in any remarks of the court, the proposition that several writs must be taken on a several recognizance. Four persons were jointly and severally bound in recognizance, and thescire facias was against two of them. One principle maintained in the case is, that where four are jointly and severally bound, two only cannot be sued, without averring the others to bo dead or outlawed. This doctrine was not indeed controverted, for the great question seems to have-been, whether the objection could be taken without plea in abatement. The court held, that where the fact does not appear on the declaration, the objection must be taken by plea, but where it already appears on the declaration, that others ought to have been joined and are not, no plea is necessary. And as it so appeared in that case, and the *156 declaration contained no averment of the death or outlawry of the others, the objection was sustained. Rut the question we have now under examination, did not arise there either directly, or incidentally.
I have thus far examined the practice in the English ■courts, rather with a- view to compare it with our own, than because I have deemed such examination to be necessary; for if in a matter of this kind, there has been in this court .ap ancient course of practice, our duty is, in my opinion, ■to adhere to and pursue it.
In this state, the recognizance in criminal cases, like the recognizance mentioned in the present writ of scire facias, is •*132] usually *several. Each recognizor binds himself to the state in a specified sum. When default has occurred in the .performance of the condition, the practice has been to issue one writ against all the recognizors. I do not mean .to sa.y that several writs may not have been sometimes used. I am, however, prepared to say, they will, in this court, be rarely found, and stand as anomalies or exceptions. Of the many instances which our files and records exhibit, I shall refer, to a few by name, that they may at any time be examined. By Woodruff, attorney general, The State v. Van Houten, principal, Van Riper,. Dey and Van Blarcom, sureties, to September term, 1810. The recognizance recited is several, not joint and several; and the command •of the writ is, that they appear, &c., “ to shew if anything they have or can say for themselves, why their said recognizance ought not to be forfeited, judgment entered against them, and execution issue thereon, pursuant to the statute in such case made and provided.” The State v. Warne & Warne, to September term, 1799. The State v. Runyan $ Rote, same term. The State v. Warner, Warner & Pursley, to April term, 1798. By Johnson, deputy attorney general, The State v. Long & Anderson, to September term, 1799. By Bloomfield, attorney general, The State v. Reagrave & Gardner, to April term, 1789. The State v. *157 Clark and Martin, to November term, 1785. The State v. Demilt Arrowsmith. The State v. Arrowsmith & Arrowsmith. The State v. Emans Covenhoven, to the same term. In all these cases, the recognizances recited in the writs are several. In the case of The State v. John Miller, Adam Miller, Abraham Van Winkle and Adam Temount, the writ of scire facias was, by Paterson, attorney general, to April term, 1783. It recites a recognizance taken before one of the justices of the Supreme Court, whereby the defendants acknowledged themselves to owe to the state 10,000k each-, and commands that they be, &c., to shew if they know of, or have anything to say for themselves, that is to say, the said John Miller, why the said 10,000k by him in form aforesaid acknowledged, should not be made upon his lands and chattels, to the use and behoof of the State of New Jersey; aud the said Adam Miller, why the said sum of 10,000k by him in form aforesaid acknowledged, should not be made upon his lands and chattels as aforesaid; and the said Abraham Van Winkle why the "'said sum of 10,000k by him in form aforesaid [*133-acknowledged, should not be made upon his lands and chattels as aforesaid; and the said Adam Temount, why the said sum of 10,000k by him in form aforesaid acknowledged, should not be made upon his lands and chattels aforesaid; to be levied according to the form of the said recognizance.
Erom this review we are in my opinion fully enabled to-say that the writ of scire facias in the present case is sustained by the course of practice adopted and sanctioned by long usage in this state, and by the doctrine and precedents of the English authorities.
The defendants farther insist, by way of defence, upon the matters contained in the plea. The recognizance, say they, has not been forfeited and judgment cannot be rendered against them although Joshua Mersereau did not appear agreeably to its condition, because neither at the time mentioned in the condition, nor before nor since was there any *158 indictment or other matter or thing pending in the Supreme ■Court against him or for him to answer unto. From the .subsequent pleadings it appears an indictment for a misdemeanor in the Court of General Gaol Delivery of the county ■of Middlesex, then was and yet is pending undetermined .against him.
There was no indictment or criminal charge, it is said; against Mersereau, nothing for him to answer. Hence it would have been vain and useless for him to appear; and therefore “ as lex neminem eogit ad vana eeu impossibilia,” although expressly bound by recognizance, he was under no legal obligation to appear. At the first view of this argument, it will occur that it leaves him or his sureties to judge of the propriety and utility of his attendance, when the obvious policy of the law refers it to the court whither he is .required to repair. The error of the argument is that it .substitutes the cause for the effect; a ground of discharge for the actual discharge; a reason for absolving him from the recognizance for the absolution itself. If he had appeared in this court and there had been nothing against .him, either here or within the authority of the court, it .might have been a sufficient- cause for the court to have discharged his recognizance and given him leave to depart, but was not in itself such leave or discharge. A recognizance in general binds to three particulars. 1st. To appear to *134] answer *either to a specified charge or to such matters as may be objected. 2d. To stand to and abide the judgment of the court; and 3d. Not to depart without the leave of the court. And each of these particulars is distinct .and independent. The party is not to depart until discharged, although no indictment should be found against him by the grand j ury, or although he be tried and a ver■dict of acquittal be rendered. If no trial is requisite, an order of discharge is regularly made by the court; of which precedents may be found in Crown cir. Comp. 79 and 4 Chitty 55. If a trial results in a verdict of not guilty, the *159 judgment of the court contains a discharge, which in our practice is always supposed to be entered, although not always actually done ; 4 Chitty, 384. In Rex v. Speneer, 1 Wils. 315, the defendant being indicted for perjury, put in bail, was tried and acquitted and the bail moved to be discharged from their recognizance. The clerks of the crown office opposed it, and said the course of the court was not to discharge the bail until the acquittal was entered of record. But as it appeared by the postea in court, that the defend,ant was acquitted, the court ordered the recognizance to be discharged. Upon this case two matters are observable ; that the acquittal did not of itself discharge the sureties, and that an order of the court was requisite. When on complaint before a justice of the peace, a party is bound to appear in the Sessions or Oyer and Terminer, and the grand jury make no presentment against him, there is then nothing pending against him in the court, yet he is not thereby . relieved from his obligation, nor at liberty to depart, nor until he has first obtained an order of the court for his discharge. In Crown Cir. Comp. 46, it is said, “ Towmrds the close of the Sessions, that is to say, after the grand jury is discharged and traverses, &c., are tried, the court proceeds to the discharge of such persons as are bound by recogniz.ance to answer. The parties bound to answer are called as they stand entered in the clerk of the peace’s book, and if there be no indictment against them, they are discharged .upon answering to their names and paying their fees.” Hawkins, Bacon and Chitty, unite in laying down doctrine which goes very far towards deciding the question raised by the plea before us. They say, “If one be bound in recognizance for the appearance of another in the court of King’s Bench at a fixed *day to answer to a par- [*135 ticular information against him, and not to depart until .discharged by the court and a nolle prosequi is entered on that information and another exhibited whereto the defendant refuses to appear, the recognizance is forfeited.” Hawk, *160 tit. Bail, Book 2, ch. 15, sect. 84; Bac. abr. tit. Bail incrim. cases L. 231; 1 Chitty cr. law, 105. The reason for this rule as given by Hawkins is farther decisive. “ For being express that the party shall not depart till he be discharged by the court, it cannot be satisfied unless he be-forthcoming and ready to answer to any other information-exhibited against him, while he continues undischarged as much as to that which he was particularly bound to answer.”' And again, he states, “ the end of the law ” to be, that “ a man’s bail do as effectually secure his appearance and put him-as much under the power of the court as if he had been in .custody of the proper officer.” How from the doctrine thus laid down and thus illustrated, the conclusion seems fairly deducible, that the clause of the recognizance whereby the-party is required not to depart without leave, is distinct in its operation from the clause whereby he is required to appear and answer; and that although the latter be to a specific charge, yet by virtue of the former he is placed-under the control of the court in every matter within the scope of their.authority ; and consequently if in the present case, Mersereau had appeared in this court according to the recognizance, and no criminal charge was here against him, but legal verification had been made that an indictment was-pending against him in the Court of Oyer and Terminer and General Gaol Delivery of the county of Middlesex, this court might lawfully have required him to enter into recognizance-for his appearance there, and on failure have committed him to the custody of the sheriff of that county.
On the argument at the bar it was said that the elementary writers who have been mentioned', cite in support of their doctrine, the case of the Queen v. Bidpath; in which, the recognizance was general and not to answer any particular charge; and hence it was argued that the proposition as stated by those writers is not sustained. In this case as reported in 12 Mod. 152, a recognizance was entered into-by Ridpath, with securities to appear on the first day of the- *161 term to answer generally and not to depart without the-leave of the court. An information was preferred against liim by *the attorney general; to which by reason of [*136 some defect in the pleading, the attorney general thought lit to enter a nolle prosequi and then exhibited another. Now if the reasoning of the counsel of the defendant here be correct, and the defence in this plea be available, it matters not whether the recognizance was to answer generally or specifically; for when the first information was ended by the nolle prosequi, “ there was no indictment or other matter or thing pending in the court brought or exhibited against him or for him to answer unto;” and hence, if the-ground of this plea bo correct, Ridpafh was ipso faeio discharged ; he was under no obligation further to appear, nor bad he occasion to seek an order of the court for leave to depart. Yet „uch was not the opinion of the Court of King’s Bench, for they held him to be still under their control ; and they stale a proposition which has since been recognized by Viner as a general rule. “ The person’s not appearing according to his recognizance, his absence, bo the cause or reason of it, what it will, was the cause of the forfeiture of the recognizance.” 18 Viner 166, tit. Recognizance C. in marg.
In The King v. the Dutchess of Kingston, Cowp. 283, an. indictment for bigamy had been found against her, and was pending in the Court of Oyer and Terminer, at Hick’s Hall,, in the county of Middlesex. Being arrested on a warrant,, she was brought into the Court of King’s Bench by writ of habeas corpus, and her counsel moved to bail her. Although' the indictment was then before the Court of Oyer and Terminer, it was admitted she must be tried in the House of Lords, whither the indictment was afterwards removed, and where her trial took place. The counsel for the prosecutor consented to her being bailed, as there could be no doubt, lie-said, of her appearance to answer the indictment. Lord Mansfield said' — “ though we should undoubtedly have bailed her., *162 .'it is better to take it as upon the consent of the prosecutor; ■and she must be bound to appear in the House of Lords, when required, to answer the indictment as well as to appear in this court. But as there is nothing against her in this court, her appearance here may be dispensed with for the future ■upon motion, without giving her the trouble of actually ■appearing -here any more.” She thereupon entered into recognizance with sureties for her appearance in the Court ■of King’s Bench, “ on the first day of the next term, and so from day to day until she shall be discharged by the said *137] *court, and not to depart the said court without leave; ■and also for her appearance before our said lord the king, in Parliament, to answer to an indictment against her for felony, whenever she shall be thereunto required.” In this case several points deserve our attention. 1st. The Dutchess was bound to appear in the House of Lords, although no indictment or other matter or thing was then pending there against her. 2d. She was also bound to appear in the Court ■ of King’s Bench, although no indictment or other charge was, or was expected to be, there against her. 3d. Having ■ entered into recognizance for her appearance in the Court of K. B. she was bound to appear there the ensuing term, -although no indictment or criminal charge should be there .against her. 4th. The absence of an indictment or of any .matter or thing against her there would not in itself be a •discharge, or relieve her from attendance, except under the ■sanction and authority of the court. 5th., A motion for her 'discharge or to dispense with her appearance 'was necessary.
Inasmuch then as the recognizors on the present occasion were expressly bound that. Mersereau should appear here at the prefixed day, and not depart without the leave of the court; inasmuch as to discharge the obligation an order of the court in some form was requisite; inasmuch as the absence of Mersereau whatever might have been its cause, was ground of forfeiture; inasmuch as the existence of facts which would .afford good cause.of discharge, did not of them *163 selves and without the sanction or order of the court effectuate a discharge; inasmuch as the party ought to have submitted himself to the control of the court, and was held to answer not only in the specified case, but in any other within their authority; inasmuch as the court might legally have required Mersereau to have appeared in the court of Middlesex county to answer the indictment which the demurrer admits was pending there, as alleged in the replication ; it follows that the matters contained in this plea are not sufficient to preclude the state from having judgment against the recognizors and execution thereon according to the force, form and effect of the recognizance.
Let the demurrer be overruled and judgment entered for the state.
Opinion of Justice Fono.
The 12th of December, 1826, these defendants came into the *court of Oyer and Terminer for Middlesex, and [*T38 acknowledged a recognizance in $3,000 each, to the state, "on condition that if Joshua Mersereau should be and appear before the Supreme Court at Trenton, on the second Tuesday of May then next, then and there to stand the traverse of a certain indictment against him for a misdemeanor, stand to and abide the judgment of the court, and not depart the court wdthout leave, then the recognizance to be void, otherwise to remain in full force and virtue.”
Upon this there issued a scire facias against these three defendants, which alleged that Joshua Mersereau being called, at the day and place, .appeared not, but made default; and these defendants being called to produce his .body, made default; whereby the said recognizance remains in full force against them, &c., therefore, &c., wffiy “ the said recognizance should not be forfeited, and judgment final be given thereupon against them, as in case of debt for the said sum of 3,000 dollars each, and execution issue thereupon accordingly, pursuant to statute,” &e.
*164 The defendants plead jointly; that there was not, on the 2d Tuesday of May, or before, or since, any indictment pending in the Supreme Court, against Joshua Mersereau, for a misdemeanor, nor for any other crime, matter or thing, nor was there any thing for him to answer to, and pray judgment respectively, &c. The state then replies, that an indictment (in hcec verba) for a misdemeanor, was found against him, in the Quarter Sessions of Middlesex, the 12th of September, 1826; which indictment, on the 2d Tuesday of December next ensuing, was sent to the court of Oyer and Terminer of Middlesex, and was then, and still is, there pending; and. that the said Mersereau has not as yet answered or pleaded thereto, &c., wherefore, &c. To-this the defendants put in a demurrer, and took two exceptions^ one to the substance of the foregoing replication, and one to the scire facias.
The first went to the merits; that it is unlawful to bind a person by recognizance to appear in court for nothing, but only to.see and be seen; yet here the replication fully admits that there was not, in the Supreme Court, any indictment for misdemeanor, or for any crime, or matter, or thing, to *139] be exhibited *in it against him. It was admitted, that if the state had brought the indictment u.p here bycertiorari, or had even shewn a certiorari sued out for bringing it up, or had moved for the allowance of such writ, it might have appeared that something was existing here, or coming, to exhibit against him; but now the replication fully admits, that no indictment, or matter or thing, is here to exhibit against him. It was also admitted, that even if an indictment had once been pending against him, which, had been quashed for lack of form, the charge would remain and amount to something to exhibit against him. A recognizance to answer to a particular indictment, and not to depart without leave, may be admitted to be a general recognizance to answer to that or any other matter; but here there was no matter, as the replication admits. And *165 it was argued as to the indictment in the gaol delivery, it is not here; that it is a totally different court, the business or proceedings in which, this court will not take any notice of, unless when brought here by appeal.
But these arguments cannot prevail. To appear, and not to depart the court without leave, is the very gist of a recognizance. Thus it is said in 1 Bac. Ab. title Bail, L, “ If a man’s bail, who are his gaolers of his own choosing, do as effectually secure his appearance and put him as much under the power of the court, as if he had been in the custody of the proper officer, they seem to have answered the end of the laxo.” Here appearance is made to be the end, great end, chief end, of a recognizance; and if it is not forfeited by non-appearance, the recognizance stands separated and divorced from its main end, and becomes .entirely useless. If an indictment for a misdemeanor be quashed, as it often happens, because the misdemeanor charged, is no public offence, but only a trespass, and ground for a private action, another indictment cannot afterward be found according to such opinion. There is no charge then remaining in court, and according to the foregoing argument, he might then depart without leave, and plead in bar to a scire facias, as here, that true ho departed without leave, but there was not any charge or matter or thing, then depending in court against him. But the recognizance is, not to depart without leave; he is not the right judge, it is the court must judge of what may be against him; they consult the attorney general, or apply for information to *others; and it'is the established law and [*140 practice that no one bound in a recognizance may depart the court without leave expressly given on motion, or else by proclamation. The plea really admits a breach of the condition of the recognizance, but shews irrelevant matter in excuse; to which irrelevant matter the state lay under no obligation to reply, nor to disclose any matter it had against him. Non-appearance was enough. The defend *166 ant was not to judge whether anything lay against him or not; he ought to appear and enquire. Wherever there is a demurrer, we always go back to the first error in pleading ; and here it appears in the plea; which contains irrelevant matter, not sufficient to excuse the breach. A certiorarimight have -been issued and not yet returned, for ought we know, to remove this indictment to this court; and if it had . so issued, there was a charge coming up, which would have been an ariswer quite sufficient to overthrow this plea, as-the defendant admits, if it had been duly replied. But such a reply could not be required. The defendant had broken his recognizance, by non-appearance, and had no right to put the state on its defence in order to aggravate his default. We ought to presume, from the known course of business, that either a certiorari had issued, or would be moved for, the moment the defendant appeared; and thus take away all pretence of want of charge. He ought to have been here to move the court, that- unless some charge was shewn against him, he might be discharged. The court might then have exercised its discretion in a judicial manner, whether matters were pending or coming by a judicial process against him. This discretion, if exercised by the proper tribunal, we know, could not have failed to produce a charge against him, and this he must have known, for it is the course of the court. To evade this charge, he usurps into his hands the discretion vested in the court, touching the pendency of a charge, or probability of one to come, and disappears ; this leads to the non-production of any charge, (because nobody was there to answer) and now he challenges the state, because no charge was produced. By this inverted course, the defendant in the first place prevents any charge from being made, by staying entirely away, and then would profit by his own wrong. Had he then appeared, we know a certiorari might have been returned, together with the indictment; or that a certiorari would have *141] *been moved or allowed, such being the course of the *167 court. On the suggestion of an indictment depending elsewhere, the court could not havo discharged the defendant, but must have awarded a certiorari to bring it up, or else have bound the defendant to appear in the Gaol Delivery and answer it there. Wo should havo had no right to discharge the defendant, nor had he any right to discharge himself. The replication sets out an indictment; which the demurrer admits; and though it was lying in another court, very distinct in jurisdiction from this, we had tho power to send for it, and we lay under obligation either to do so, on suggestion or else to send him there. We should have done one or the other, if ho had appeared; and if he escapes without trial, it is entirely attributable to his making default. The plea relies on certain matters which are not pleadablo in justification of breaking a recognizance; it is without precedent in books of entries; it is against principle, that defendants should ever discharge themselves, without the leave of the court; and, therefore, the plea is-insufficient. But if pleading over had cured its defect, the replication, by disclosing an indictment depending elsewhere, makes a case of charge, on which this court could not have liberated the defendant, and, therefore, it became his duty to appear. Whichever way we take the case, the demurrer cannot be legally supported.
Secondly, we come to tho second exception which is taken, to the scire facias itself. The defendants most manifestly bound themselves, not jointly, for one general sum, but severally and respectively, in the sum of 83,000 each, and so their undertakings are several. This binding if clone by bond could not possibly admit of their being sued in one joint action of debt, but a several action must have been brought against each; for the same reason an exception is taken that here there ought to be not one scire facias against all, but one against each. The exception is certainly very sound, if there be not a distinction between action and scire facias. Upon searching the books, and *168 particularly of entries, this distinction plainly appears; and one scire facias will lie against many, even where their undertakings are several, if there be only one recognizance. In 2 Lil. Ent. 382, we have a precedent of fi. fa. on recognizance of bail. It commands the sheriff to make of the lands and chattels of T. 1001, and of the lands and chattels of B. 1001, to be paid to F. according to the form and *142] *effect of the adjudication of execution in a certain recognizance acknowledged by them to said F. Here then-is presented one recognizance by two, and thereon one scire facias against both, and only one execution against 'both, and yet it commands the levy of'a several sum from each, -and declares that execution was adjudged in this several form against each. And so it may be done in the present case. In 2 Lil. Ent. 380, we have an entry of judgment oh ¡recognizance. It shews that A. and J. bound themselves both jointly and severally in a recognizance of 2401 to L.; to be levied of their and each of their lands; and the sheriff was to make known to them, to wit: to A. why the sum should not be raised of his lands, 'and to J. why the sum should not be raised of his lands; and on nil dicit, it was considered that L. should have execution against A. and J. “ of the said several sums,” and “ of their and each of iheir lands ” according to the effect of the recognizance. Here is a joint and several recognizance and execution awarded thereon both jointly and severally; w'hich award would be utterly erroneous in actions on contracts, whether joint, or several, or both; and shews the rule in actions not applicable to writ of scire facias. In 2 Lil. Ent. 403, Carr v. Oldys, Gr. and O. were bound to M. jointly and severally dn 301; and the same term R. was bound to the same M. .•in 601. and only one scire facias. See also 2 Lil. Emt. 406. In 2 Saund. 72, b. note 4. The commentator lays down the rule in the following words — “ one scire facias is sufficient, because the recognizance upon which the scire facias is bounded, being joint and several, and the purport of it being *169 to have execution according to the form and effect of the recognizance, it follows that although the scire facias be joint, the execution may be several.” Therefore, this exception is unsupported equally with the former, and consequently our judgment must be for the state.
Justice Drake concurred.
Judgment for the state.

\